**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| MICHAEL LAFAVE, and CETTE AI CORPORATION<br>Plaintiffs,<br>v.<br><br>VOYA FINANCIAL, INC., VOYA INVESTMENT MANAGEMENT CO. LLC, and DOES 1-12, inclusive,<br>Defendants. | : | Case No.: 26-cv-5375 |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' APPLICATION FOR A RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

White and Williams LLP
810 Seventh Avenue, Suite 500
New York, New York 10019
*Attorneys for defendants Voya Financial, Inc., and Voya Investment Management Co. LLC*

52455983v.1
52485803v.1

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........ 1
FACTUAL BACKGROUND ........ 3
A. Plaintiffs Attribute a Series of Unexplained Computer and Network Events to the Voya Defendants ........ 3
B. Plaintiffs' Claimed Connection Between the Alleged Cyber Activity and Voya Defendants Is Plaintiff's LTD Claim and His Ontario Address ........ 4
C. Plaintiffs' GitHub Allegations Likewise Do Not Identify the Voya Defendants ........ 6
D. Plaintiff Also Relies Upon Subsequent Tracking and Account Activity Without Identifying Voya as the Actor ........ 7
E. Plaintiffs Rely Upon Counsel's Letters to Voya and Voya's Alleged Failure to Respond to the Accusations ........ 8
F. Defendants VFI and VIMC Had No Involvement With Plaintiff's LTD Claim or the Conduct Alleged in the OTSC ........ 9
G. Plaintiffs Seek Extensive Prohibitory and Affirmative Injunctive Relief Against the Voya Defendants Without any Proof of Wrongdoing by the Defendants ........ 10
LEGAL ARGUMENT ........ 11
I. PLAINTIFF'S CANNOT SATISFY THE REQUIREMENTS FOR THE EXTRAORDINARY REMEDY OF A TEMPORARY RESTRAINING ORDER OR PRELIMINARY INJUNCTION ........ 11
II. PLAINTIFFS CANNOT DEMONSTRATE A LIKELIHOOD OF SUCCESS BECAUSE THERE IS NO EVIDENCE CONNECTING EITHER VOYA DEFENDANT TO THE ALLEGED CONDUCT ........ 12
A. Plaintiffs' LTD-Based Theory Depends Upon a Factual Premise Refuted by the Evidence ........ 13
B. Plaintiffs' Reliance on Temporal Proximity Cannot Establish That Either Voya Defendant Was Responsible for the Alleged Unauthorized Activity ........ 14
C. Plaintiffs' Technical Evidence Does Not Identify Defendants as the Actors Responsible for the Unauthorized Activity ........ 15
D. Plaintiffs Cannot Supply the Missing Evidentiary Nexus by Pointing to Accusatory Letters Sent by Their Own Counsel and Voya Defendants' Purported Failure to Respond ........ 16
III. PLAINTIFFS CANNOT ESTABLISH IRREPARABLE HARM BECAUSE THERE IS NO EVIDENCE THAT VOYA DEFENDANTS ARE ENGAGED IN ANY PAST, ONGOING OR THREATENED CONDUCT AGAINST PLAINTIFFS ........ 17



52455983v.1
52485803v.1

IV. PLAINTIFFS' REQUEST FOR BROAD PROHIBITORY AND AFFIRMATIVE INJUNCTIVE RELIEF IS UNSUPPORTED BY THE RECORD AND EXCEEDS THE PROPER SCOPE OF RULE 65 ....18

V. THE BALANCE OF EQUITIES DOES NOT FAVOR IMPOSING EXTRAORDINARY INJUNCTIVE RELIEF UPON THE VOYA DEFENDANTS WHO HAD NO INVOLVEMENT IN THE ALLEGED CONDUCT ....21

VI. THE PUBLIC INTEREST DOES NOT SUPPORT THE ENTRY OF AN INJUNCTION AGAINST THE VOYA DEFENDANTS BASED UPON SPECULATION ....22

CONCLUSION ....23

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Carte Blanche (Singapore) Pte., Ltd. v. Diners Club Int'l, Inc.*,
2 F.3d 24 (2d Cir. 1993)....13, 14

*City of New York v. Mickalis Pawn Shop, LLC*,
645 F.3d 114 (2d Cir. 2011)....20

*Faiveley Transp. Malmo AB v. Wabtec Corp.*,
559 F.3d 110 (2d Cir. 2009)....16, 18, 23

*Grand River Enter. Six Nations, Ltd. v. Pryor*,
481 F.3d 60 (2d Cir. 2007)....11

*N. Am. Soccer League, LLC v. United States Soccer Fed'n, Inc.*,
883 F.3d 32 (2d Cir. 2018)....11, 22

*N.Y. Civil Liberties Union v. N.Y.C. Transit Auth.*,
684 F.3d 286 (2d Cir. 2012)....11, 19

*Peregrine Myanmar Ltd. v. Segal*,
89 F.3d 41 (2d Cir. 1996)....20

*S.C. Johnson & Son, Inc. v. Clorox Co.*,
241 F.3d 232 (2d Cir. 2001)....20

*Salinger v. Colting*,
607 F.3d 68 (2d Cir. 2010)....22, 23

*Schmidt v. Lessard*,
414 U.S. 473 (1974)....20

*Sussman v. Crawford*,
488 F.3d 136 (2d Cir. 2007)....11, 22

*Tom Doherty Assocs., Inc. v. Saban Ent., Inc.*,
60 F.3d 27 (2d Cir. 1995)....11, 19

*Winter v. Natural Resources Defense Council, Inc.*,
555 U.S. 7 (2008)....11, 22

**OTHER AUTHORITIES**

Fed. R. Civ. P. 65(d)(1)....20

Federal Rule of Civil Procedure 65 ....................................................................................11, 18

Federal Rule of Civil Procedure 65(d)....................................................................................20

**PRELIMINARY STATEMENT**

Plaintiffs seek extraordinary injunctive relief against two corporate entities that had no involvement in the conduct underlying this action. Their application should be denied.

Although Plaintiffs submit extensive materials concerning alleged unauthorized activity affecting Plaintiff Michael Lafave's computers, network, accounts, and electronic repositories, the critical evidentiary link is entirely absent. Plaintiffs submit nothing with the Order to Show Cause which connects Defendants, Voya Financial, Inc. (VFI) and Voya Investment Management Co. LLC (VIMC) (collectively "Voya Defendants") to any alleged cyber intrusion, unauthorized access, surveillance, tracking, exfiltration, destruction of evidence, or other misconduct complained of.

Plaintiffs unsuccessfully attempt to bridge that fundamental evidentiary gap through speculation. Plaintiff Lafave contends that he provided sensitive information, including an address in Ontario, Canada to "Voya" in connection with his long-term disability (LTD) claim and that suspicious activity involving his computer systems subsequently occurred when he was in Canada. From that sequence of events, Plaintiffs leap to the conclusion that the Defendants must somehow be responsible.

The evidence submitted by Defendants demonstrates otherwise. As set forth in the accompanying Declaration of Michael Peters, Plaintiff Lafave submitted a claim for LTD benefits to his group insurance carrier, not VFI or VIMC. (**Exhibit A**, Declaration of Michael Peters ("Peters Decl.") ¶ 7)). VFI and VIMC did not receive any information from the group insurance carrier about Plaintiff Lafave in connection with the LTD claim, including claim information, contact information, or address. (*Id.* at ¶ 15). Moreover, neither VFI nor VIMC issued Plaintiff's LTD policy, administered or evaluated his LTD claim, received or maintained the authorizations or claim-related information he submitted in connection with that claim, or communicated with

Plaintiff concerning the administration of his LTD claim. (*Id.* at ¶¶ 10, 12-13, 16-17). Nor did either Defendant access Plaintiff Lafave's computers, systems, networks, accounts, repositories, or electronic data; obtain or use his confidential or proprietary information; to monitor, surveil, track, or investigate Plaintiff; or retain, direct, or authorize any person to engage in such conduct. (*Id.* at ¶¶ 18-24).

VIMC is even further removed from any of the conduct alleged in the Complaint. VIMC is a wholly owned subsidiary of VFI engaged in an entirely separate line of business and had no relationship with Plaintiff, his LTD claim, or any of the events alleged in this action. (*Id.* at ¶¶ 9-10, 14). VFI's connection is likewise insufficient. VFI is the corporate parent of ReliaStar Life Insurance Company ("ReliaStar"), the entity that issued the LTD policy. (*Id.* at ¶¶ 1, 13). But, corporate affiliation does not transform VFI into the entity that issued or administered Plaintiff's LTD claim, much less establish that it participated in an alleged cyber intrusion.

Plaintiffs' voluminous technical submissions do not cure this defect. At most, the materials submitted purport to establish that Plaintiff experienced unexplained or unauthorized activity involving his devices and accounts. They do not identify a Voya IP address, Voya-owned device, Voya employee, Voya vendor, Voya investigator, communication involving Defendants, payment by either Defendant, instruction from either Defendant, or any other evidence tying the Voya Defendants to the alleged activity. Evidence that an intrusion allegedly occurred is not evidence that the Voya Defendants committed it.

Against this record, Plaintiffs cannot establish any prerequisite for the extraordinary relief they seek. They cannot demonstrate a likelihood of success against the Voya Defendants because they have not submitted any evidence connecting the Voya Defendants to the alleged misconduct. Plaintiffs cannot demonstrate imminent irreparable harm attributable to the Voya Defendants

because neither Defendant has been or is presently accessing, monitoring, surveilling, tracking, or otherwise interacting with Plaintiff or his systems. And the equities and public interest do not favor imposing broad injunctive and affirmative preservation obligations upon corporate entities based solely on speculation.

Plaintiffs' Order to Show Cause should therefore be denied in its entirety.

## FACTUAL BACKGROUND

### A. Plaintiffs Attribute a Series of Unexplained Computer and Network Events to the Voya Defendants

Plaintiffs contend that Plaintiff Michael Lafave ("Lafave") developed and maintained confidential and proprietary information through Plaintiff Cette AI Corporation ("Cette"), including artificial intelligence and quantum-computing related materials, source code, research materials, technical designs, patent-related materials, and commercialization information. (Affidavit of Michael Lafave in Support of Plaintiffs' Application for Order to Show Cause ("Lafave Aff.") ¶¶ 3-6).

Plaintiff states that he maintained those materials on computing devices, private repositories, cloud-connected accounts, and related systems protected through passwords, authentication safeguards, and other security measures. (*Id.* at ¶ 6). Plaintiff further states that he never authorized the Voya Defendants or anyone acting on their behalf to access those systems or to obtain, copy, transmit, use, disclose, modify, delete, or otherwise exploit Plaintiffs' confidential or proprietary information. (*Id.* at ¶¶ 7-8).

Plaintiff Lafave alleges that beginning on or about December 25, 2025, while he was staying at a cottage in Ontario, Canada, his networks and devices began exhibiting what he considered unusual and unexplained behavior. (*Id.* at ¶ 20). He states that he identified previously unknown devices on his network and preserved logs and screenshots concerning those events. (*Id.*

at ¶ 21). According to Plaintiff, at least two unauthorized machine-to-machine devices accessed his network on December 25, 2025. (*Id.* at ¶ 22).

Plaintiff further states that on December 26, 2025, he observed activity that he believed was consistent with an attempt to erase or overwrite evidence of the alleged intrusion. (*Id.* at ¶ 24). He claims to have preserved records reflecting more than three billion dropped packets associated with a non-public-facing IP address and alleges that a Wi-Fi extender at the residence had been spoofed or impersonated. (*Id.* at ¶¶ 25-27).

Plaintiff also claims that he discovered unusual root-account activity on his computer. (*Id.* at ¶ 28). Specifically, he states that on January 6 and January 12, 2026, he observed thousands of rapid "bursts" associated with what he describes as a remote root account that had breached his Apple MacBook Pro M2. (*Id.* at ¶¶ 29-30). Plaintiff further alleges that he discovered a record reflecting a remote root login on December 25, 2025, shortly before he was notified that unauthorized devices had joined his network. (*Id.* at ¶ 31). He claims that by January 15, 2026, he had also observed "deauthentication attacks" and modifications to root directories that he did not perform. (*Id.* at ¶¶ 32-33).

Notably, however, none of those allegations identifies VFI or VIMC as the source of the alleged activity. Plaintiff describes unknown devices, unidentified IP-related activity, spoofed hardware, and unidentified remote access, but does not identify any Voya-owned device, Voya IP address, Voya employee, Voya vendor, or other technical identified connecting either VFI or VIMC to those events. (See generally *id.* at ¶¶ 20-33).

### B. Plaintiffs' Claimed Connection Between the Alleged Cyber Activity and Voya Defendants Is Plaintiff's LTD Claim and His Ontario Address

The principal factual connection Plaintiff Lafave attempts to draw between the alleged computer activity and the Voya Defendants arises from his long-term disability claim. Plaintiff

Lafave alleges that on or about July 7, 2025, he filed an LTD claim under his group policy with the entity he improperly now identifies as Defendant Voya Financial Inc., and that the claim was approved in August 2025. (*Id.* at ¶¶ 11-12). Plaintiff further alleges that, in connection with the LTD claim, he provided "Voya" with sensitive information concerning his professional background, economic losses, proprietary technology, personal circumstances, and location. (*Id.* at ¶¶ 1-13).

Plaintiff also states that he provided his purported "Voya claims manager" with an economist's report concerning the value of Cette AI's technology and business opportunities. (*Id.* at ¶ 14). According to Plaintiff Lafave, he provided that information for claim-administration purposes and did not authorize its use for monitoring his devices, accessing his systems, or obtaining proprietary information. (*Id.* at ¶ 15).

Most significantly for purposes of Plaintiffs' theory, Plaintiff Lafave alleges that on December 23, 2025, he notified "Voya" that his mailing address would change to a family cottage in rural Braeside, Ontario, effective January 2, 2026. (*Id.* at ¶ 17). Plaintiff Lafave further asserts that Defendants were the only "corporate actors" to whom he had disclosed the Ontario cottage address and his plan to be there. (*Id*. at ¶ 18). He states that, other than his mother, he is unaware of any person or entity possessing what he characterizes as the same combination of information regarding his disability status, cottage location, treatment and travel, technology, and technical environment. (*Id.* at ¶ 19).

Plaintiffs rely heavily on the timing of these events. Plaintiff Lafave states that he disclosed the Ontario on December 23, 2025 and that his network and devices began exhibiting unexplained activity on December 25, 2025 while he was at the cottage. (*Id.* at ¶¶ 17, 20-22).



52455983v.1
52485803v.1

Plaintiffs inference, however, depends on a fundamental factual premise that the evidence submitted by the Voya Defendants entirely refutes: neither VFI or VIMC issued Plaintiff Lafave's LTD Policy, administered or evaluated Plaintiff Lafave's LTD claim or received the claim-related information upon which Plaintiff Lafave's theory depends. (Peters Decl. ¶¶ 7, 10, 14-17, 19). Of note, per Plaintiff Lafave's notice to his group insurance carrier, the effective date of his relocation from Denver, CO to Ontario, Canada was January 2, 2026, not December 2025. (Lafave Aff. ¶ 17).

**C. Plaintiffs' GitHub Allegations Likewise Do Not Identify the Voya Defendants**

Plaintiff Lafave separately alleges unauthorized activity involving GitHub repositories containing proprietary materials (Lafave Aff. ¶¶ 34-43). Plaintiff Lafave states that he maintained confidential and proprietary code in GitHub repositories and that, after checking his account for possible unauthorized activity, he later identified records reflecting deletion of a public key and two "migration.create" events affecting various repositories. (*Id.* at ¶¶ 34-39).

Plaintiff Lafave further alleges, upon information and belief, that the two migration events appeared to share GitHub request identified and that this was consistent with a compromised authenticated session. (*Id.* at ¶¶ 41-42). Based upon the timing, alleged device compromise, and GitHub records, Plaintiff Lafave states that he believes the repositories "may have been accessed or manipulated" through a compromised device, credential misuse, session hijacking, or another unauthorized mechanism. (*Id.* at ¶ 43).

Again, however, Plaintiffs do not identify either VFI or VIMC in connection with the GitHub activity. They identify no Voya account, IP address, employee, device, credential, vendor, or other technical evidence showing that the Voya Defendants accessed or manipulated a GitHub repository. (See *id.* at ¶¶ 34-43).

### D. Plaintiffs Also Rely Upon Subsequent Tracking and Account Activity Without Identifying Voya as the Actor

Plaintiffs allege that after their counsel sent a cease-and-desist and preservation letter to Voya Financial Inc., on January 19, 2026, Plaintiff Lafave continued to experience events that he considered consistent with surveillance, tracking, or account compromise. (*Id.* at ¶¶ 44-45).

Plaintiff Lafave states that on or about January 27, 2026, he received an Apple alert indicating that an unknown device or item appeared to be moving with him after he relocated from the Ontario cottage to a hotel. (*Id.* at ¶¶ 46-48). He further states that on January 28, 2026, he discovered that someone had searched his email account for "SDNY." (*Id.* at ¶ 49). Plaintiff considered that search significant because his counsel had discussed the possibility of federal litigation in New York. (*Id.* at ¶ 50).

Plaintiff Lafave thereafter states that he remains concerned that "Defendants, or persons acting in concert with them," may continue to access his systems and may be destroying evidence. (*Id.* at ¶ 51).

Plaintiffs' counsel similarly references an unspecified incident involving the W Hotel as allegedly heightening Plaintiff Lafave's concern that the conduct may involve physical proximity or surveillance. (Affirmation of Tor Ekeland in Support of Order to Show Cause ("Ekeland Aff.") ¶ 23).

Neither Plaintiff Lafave's affidavit nor counsel's affirmation identifies any Voya employee, representative, investigator, vendor, device, communication, or other evidence connecting the Voya Defendants to the Apple alert, the purported "SDNY" search, the W Hotel incident, or any alleged physical surveillance. (*See* Lafave Aff. ¶¶ 44-51; Ekeland Aff. ¶¶ 21-24).

### E. Plaintiffs Rely Upon Counsel's Letters to Voya and Voya's Alleged Failure to Respond to the Accusations

Plaintiffs also rely on correspondence that their counsel sent to VFI after the alleged computer activity had already occurred. Plaintiffs' counsel states that on January 19, 2026, his office sent VFI a preservation and cease-and-desist letter advising that "Voya and/or entities acting on its behalf may have been involved" in the alleged unauthorized access. (Ekeland Aff. ¶¶ 16 and Ex. A). Counsel further states that the letter demanded preservation of potentially relevant information. (*Id.* at ¶¶ 16-17 and Ex. A).

Counsel states that a second letter was sent to Voya's (VFI's) General Counsel on February 24, 2026, asserting that information obtained during counsel's investigation had heightened concern that the alleged activity "may be attributable to Voya or persons or systems acting on its behalf." (Ekeland Aff. ¶ 18 and Ex. B).

Plaintiffs further rely upon a March 16, 2026 response from the group insurance carrier concerning Plaintiff's LTD claim. (*Id.* at ¶ 19 and Ex. C). Counsel complains that the response did not address Voya's alleged role in the purported unauthorized access, expressly confirm implementation of a litigation hold, or provide the assurance demanded by Plaintiffs. (Ekeland Aff. ¶¶ 19-20). Plaintiffs' memorandum goes even further and argues that Defendants "never denied" the alleged unauthorized activity despite having received counsel's accusations. (Pl. Mem. of Law at 8).

Counsel's correspondence does not constitute evidence that the underlying accusation is true. The letters themselves describe possible or suspected involvement, and Plaintiffs cannot supply the missing evidentiary nexus merely by accusing the Voya Defendants of wrongdoing and then relying upon the Voya Defendants' alleged failure to substantively deny the accusations.

**F. Defendants VFI and VIMC Had No Involvement With Plaintiff Lafave's LTD Claim or the Conduct Alleged in the OTSC**

The evidence submitted by the Voya Defendants establishes that Plaintiffs' attribution of the alleged conduct to the named Voya Defendants is incorrect.

As set forth in the Declaration of Michael Peters, neither VFI or VIMC issued Plaintiff's LTD policy, administered or evaluated Plaintiff Lafave's LTD claim, received any claim-related authorizations from Plaintiff Lafave, or received the claim-related information that Plaintiff Lafave contends provided the means to identify his location or technical environment. (Peters Decl. ¶¶ 7, 10, 14-17, 19-24).

More specifically, the Voya Defendants did not receive information concerning Plaintiffs' computers, devices, networks, cloud accounts, email accounts, GitHub repositories, credentials, or other systems. (*Id.* at ¶ 20). Neither Defendant possessed any information about Plaintiffs that provided a means or opportunity to locate, monitor, surveil, track, profile or otherwise obtain information concerning Plaintiffs. (*Id.* at ¶ 22). None of the individuals who Plaintiff Lafave communicated with concerning the administration of his LTD claim was acting as a claims manager on behalf of the Voya Defendants. (*Id*. at ¶¶ 18-23). And there is no communication, information, or document connecting the Voya Defendants to any of the allegations of intrusion, unauthorized access, surveillance, exfiltration or any of the misconduct alleged by Plaintiffs. (*Id*. at ¶ 23).

Additionally, neither Defendant received any information concerning Plaintiffs' alleged proprietary technology, computer systems or devices, technical environment, or GitHub repositories. (*Id*. at ¶¶ 20). Finally, neither Defendant presently possesses Plaintiffs' allegedly exfiltrated proprietary information or is presently engaged in any unauthorized access, surveillance, tracking, monitoring, or other activity against Plaintiffs. (*Id*. at ¶¶ 19-24).

### G. Plaintiffs Seek Extensive Prohibitory and Affirmative Injunctive Relief Against the Voya Defendants Without any Proof of Wrongdoing by the Voya Defendants

Based upon the foregoing allegations, Plaintiffs seek temporary and preliminary injunctive relief intended to generally prevent any further alleged unauthorized access to Plaintiffs' systems, surveillance or tracking of Plaintiff Lafave, use or dissemination of Plaintiffs' confidential or proprietary information, and loss or destruction of potentially relevant evidence. (See Lafave Aff. ¶¶ 61-69; Ekeland Aff. ¶¶ 24-30; Proposed Order ¶¶ 1-5).

Plaintiffs contend that such relief is necessary because they believe the alleged unauthorized activity is ongoing and poses a continuing risk to Plaintiffs' confidential information, proprietary materials, electronic accounts, and potential evidence.

As discussed below, however, Plaintiffs' request rests on the unsupported assumption that either VFI or VIMC engaged in, or continues to engage in, the conduct Plaintiffs seek to restrain. The evidence submitted by the Voya Defendants establishes otherwise.

Indeed, prior to the pre-litigation correspondence concerning the allegations at issue here, neither of the Voya Defendants had any direct relationship or communications with Plaintiffs concerning the matters alleged in this action. Neither defendant issued the LTD policy, administered, evaluated, or handled Plaintiff Lafave's LTD claim, communicated with Plaintiff Lafave concerning his LTD claim, or received the information and documentation Plaintiff Lafave submitted in connection with the administration of his LTD claim. (Peters Decl. at ¶¶ 17-19). Thus, notwithstanding Plaintiff Lafave's repeated references to having provided information to "Voya" and to a purported "Voya claims manager" (Lafave Aff. ¶¶ 11-19), those communications and information were not provided to either of the Voya Defendants.

Defendant VIMC is even further removed from the alleged conduct. It had no relationship whatsoever with either Plaintiff, had no involvement with Plaintiff Lafave's LTD claim, and had

no reason to possess or know Plaintiff Lafave's personal, medical, location, technological, or proprietary information. (Peters Decl. at ¶¶ 10, 14-15). Defendant VFI also had no direct relationship with Plaintiff Lafave or involvement in his LTD claim. Its only connection is its corporate relationship with the separate entity that issued the LTD policy. (*Id.* at ¶¶ 11, 13).

Accordingly, Plaintiffs seek extraordinary injunctive relief against two entities that did not administer Plaintiff Lafave's LTD claim, did not receive the claim-related information upon which Plaintiffs' theory of wrongdoing depends, had no direct dealings with Plaintiffs concerning the matters alleged, and did not engage in any of the cyber intrusion, surveillance, tracking, or other conduct Plaintiffs seek to enjoin.

## LEGAL ARGUMENT

### I. PLAINTIFF'S CANNOT SATISFY THE REQUIREMENTS FOR THE EXTRAORDINARY REMEDY OF A TEMPORARY RESTRAINING ORDER OR PRELIMINARY INJUNCTION

A preliminary injunction is "one of the most drastic tools in the arsenal of judicial remedies" and should not issue unless the movant makes a clear showing that the requirements for such extraordinary relief have been satisfied. *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007); *see also Sussman v. Crawford*, 488 F.3d 136, 139 (2d Cir. 2007) (A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion"). Because this action has been removed to federal court, Plaintiffs' request for prospective injunctive relief is governed by Federal Rule of Civil Procedure 65 and federal preliminary-injunction standards. *See* Fed. R. Civ. P. 65; *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008).

To obtain preliminary injunctive relief, Plaintiffs must establish "(1) irreparable harm; (2) either a likelihood of success on the merits or both serious questions on the merits and a balance of hardships decidedly favoring the moving party; and (3) that a preliminary injunction is in the

public interest." *N. Am. Soccer League, LLC v. United States Soccer Fed'n, Inc.*, 883 F.3d 32, 37 (2d Cir. 2018). Moreover, to the extent Plaintiffs seek affirmative relief requiring Defendants to identify, preserve, collect, and sequester categories of information and materials, their proposed order is mandatory rather than merely prohibitory. A party seeking mandatory preliminary relief must meet a heightened legal standard by showing a "clear or substantial likelihood of success on the merits." *N.Y. Civil Liberties Union v. N.Y.C. Transit Auth.*, 684 F.3d 286, 294 (2d Cir. 2012); *Tom Doherty Assocs., Inc. v. Saban Ent., Inc.*, 60 F.3d 27, 33-34 (2d Cir. 1995).

As detailed below, Plaintiffs cannot satisfy the ordinary standard for a preliminary injunction, much less the heightened standard applicable to mandatory relief. Accordingly, their Order to Show Cause must be dismissed in its entirety.

## II. PLAINTIFFS CANNOT DEMONSTRATE A LIKELIHOOD OF SUCCESS BECAUSE THERE IS NO EVIDENCE CONNECTING EITHER VOYA DEFENDANT TO THE ALLEGED CONDUCT

Nothing submitted with the Plaintiffs' Order to Show Cause identifies either VFI and VIMC as the entity responsible for the alleged unauthorized activity. Plaintiffs submit numerous technical records that they contend demonstrate unauthorized access. But even accepting Plaintiffs' characterization of those records for purposes of this application, the records establish, at most, that Plaintiff Lafave believes his systems were accessed by *an unknown third party*. Plaintiffs, however, ***do not*** establish who that third party was.

Plaintiffs identify no IP address associated with the Voya Defendants. They identify no Voya-owned hardware or device. They identify no Voya employee who accessed Plaintiff's systems. They identify no investigator or vendor retained by either Defendant. They identify no payment, invoice, contract, instruction, email, text message, internal communication, or other document reflecting that either Defendant authorized or participated in surveillance or computer access. And they identify no forensic evidence tracking the alleged access to either Defendant.

Plaintiffs cannot establish a likelihood of success against a particular defendant merely by offering evidence that an injury occurred. They must establish a likelihood that the defendant against whom relief is sought caused or participated in the conduct giving rise to that injury. Plaintiffs fail to make this threshold showing.

### A. Plaintiff Lafaves' LTD-Based Theory Depends Upon a Factual Premise Refuted by the Evidence

Plaintiff Lafave asserts that he provided "Voya" with his Ontario address and other sensitive information, and that suspicious computer activity subsequently occurred after he traveled to Ontario. According to Plaintiff Lafave, this information was provided to Voya in connection with his LTD claim.

However, as the Peters Declaration establishes, neither VFI or VIMC administered or evaluated Plaintiff Lafave's LTD claim or received the information Plaintiff Lafave submitted in connection with that claim. (See generally, Peters Decl. at ¶¶16-24). Moreover, neither Defendant issued the LTD Policy through which Plaintiff Lafave submitted a disability claim. (*Id.* at ¶ 13, 16). Thus, Plaintiff Lafave's central inferential chain fails at its first step.

Significantly, Plaintiffs elected not to sue the entity that actually administered, evaluated, or made decisions concerning Plaintiff Lafave's LTD claim. Instead, Plaintiffs seek extraordinary relief against a separate parent corporation, in addition to a corporation unrelated to LTD claims handling, based solely on its corporate relationships to the entity involved with Plaintiff Lafave's LTD claim, but with no nexus to the underlying events. That theory is contrary to longstanding Second Circuit law recognizing that affiliated corporations are presumed to be "legally distinct entities" and that the conduct of one entity is not automatically attributable to another merely because of common ownership or corporate affiliation. *Carte Blanche (Singapore) Pte., Ltd. v. Diners Club Int'l, Inc.*, 2 F.3d 24, 26 (2d Cir. 1993).

The fact that Plaintiff Lafave may have supplied information to another corporate entity involved with his LTD claim does not establish that Defendants VFI or VIMC received that information, much less that either Defendant then used that information to conduct a cyber intrusion. Corporate affiliation is not evidence of participation in wrongdoing. Plaintiffs cannot collapse legally separate entities into a single undifferentiated "Voya" entity and attribute the conduct or information of one entity to every affiliated corporation. See *Carte Blanche*, 2 F.3d at 26.

Plaintiffs identify no evidence that the Voya Defendants administered Plaintiff Lafave's LTD claim, participated in the claim determination process, directed the actions of the claims administrator, possessed the information at issue, or otherwise engaged in any of the conduct giving rise to their allegations. Absent evidence connecting Defendants VFI and VIMC to the alleged wrongdoing, Plaintiffs cannot establish a likelihood of success on the merits against the Voya Defendants, and their request for preliminary injunction and a TRO must be denied.

### B. Plaintiffs' Reliance on Temporal Proximity Cannot Establish That Either Voya Defendant Was Responsible for the Alleged Unauthorized Activity

Plaintiff Lafave emphasizes that he disclosed his Ontario address on December 23, 2025 (*with an effective date of January 2, 2026*) and allegedly began experiencing suspicious network activity on approximately December 25, 2026. That sequence of events does not establish causation.

Even assuming Plaintiff Lafave accurately describes both events, the timing does not identify who engaged in the alleged unauthorized activity. Plaintiffs conclusion depends entirely upon the assumption that Defendants VFI and VIMC received Plaintiff Lafave's Ontario address and then used it to locate and compromise his devices. The Voya Declaration directly refutes the

former premise, and Plaintiffs have no evidence supporting the latter. (*See* Peters Decl. at ¶¶ 15, 19, 22,).

Plaintiffs' subjective belief as to who must have been responsible based on timing of the events does not substitute for evidence sufficient to warrant extraordinary injunctive relief.

### C. Plaintiffs' Technical Evidence Does Not Identify the Voya Defendants as the Actors Responsible for the Unauthorized Activity

The fundamental evidentiary deficiency identified above is equally apparent in Plaintiffs' technical evidence. Even assuming that the materials establish the occurrence of unauthorized activity, they provide no evidence identifying VFI or VIMC as the entity responsible for that activity.

Plaintiff Lafave points to unknown devices appearing on his network, an alleged spoofed Wi-Fi extender or MAC address, remote root-account activity, unauthorized GitHub migration events, an Apple tracking alert, and an unauthorized search of Plaintiff Lafave's email account for "SDNY." (Lafave Aff. ¶¶ 20-25). But none of those alleged events identifies either named Voya Defendant as the actor responsible for the activity.

An unknown device is not evidence of a Voya device. An unidentified remote login is not evidence of a Voya login. A spoofed MAC address does not identify Voya Defendants as the parties that allegedly spoofed it. Unauthorized activity involving Plaintiffs' GitHub repositories do not establish that the Voya Defendants accessed those repositories. And, neither an Apple tracking alert nor an unexplained search of Plaintiff Lafave's email account identifies the Voya Defendants as the entity responsible.

The technical evidence, therefore, does not fill the critical gap in Plaintiffs' application. At most, it is offered to demonstrate that unexplained or unauthorized activity occurred. It does not

establish who committed that activity and provides no evidentiary basis to attribute it to Defendants VFI and VIMC.

### D. Plaintiffs Cannot Supply the Missing Evidentiary Nexus by Pointing to Accusatory Letters Sent by Their Own Counsel and Voya Defendants' Purported Failure to Respond

Plaintiffs' attempt to treat a response to counsel's letter as substantive evidence is equally unavailing. Plaintiffs argue that because their counsel twice accused VFI of cyber intrusion and VFI did not expressly deny those accusations, the Court should draw an inference supporting Plaintiffs' claims. There is no basis for doing so.

Plaintiffs' January 2026 letter itself acknowledged that counsel's investigation was preliminary and asserted only that Voya may have been involved. Plaintiffs cannot transform their own suspicion into evidence simply by sending that suspicion to a corporation and demanding a response.

Nor did the response that Plaintiffs received concerning Plaintiff Lafave's LTD claim constitute an admission of anything. To the contrary, it addressed the only attenuated connection between Plaintiff Lafave and Voya – Plaintiff Lafave's LTD group policy that was issued by ReliaStar, a separate legal entity and subsidiary of VFI, and upon information and belief, claims are administered via a separate third-party. VFI itself did not issue or administer the group policy or handle Plaintiff Lafave's claim, while VIMC had no relationship whatsoever with Plaintiff Lafave or his LTD claim. The response therefore provides no evidentiary support for Plaintiffs' attempt to connect the Voya Defendants to the conduct alleged in this action.

The Peters Declaration submitted contemporaneously with this opposition eliminates any possible ambiguity. Specifically, neither of the named Defendants were involved with Plaintiff Lafave's LTD claim administration nor were they engaged in the cyber intrusion, surveillance, tracking, or other conduct alleged by Plaintiffs.

## III. PLAINTIFFS CANNOT ESTABLISH IRREPARABLE HARM BECAUSE THERE IS NO EVIDENCE THAT VOYA DEFENDANTS ARE ENGAGED IN ANY PAST, ONGOING OR THREATENED CONDUCT AGAINST PLAINTIFFS

Plaintiffs' application independently fails because they cannot establish an actual and imminent threat of irreparable harm attributable to the Voya Defendants.

Irreparable harm is "the single most important prerequisite for the issuance of a preliminary injunction," and a failure to establish it is independently sufficient to deny preliminary relief. *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009). The claimed injury must be "neither remote nor speculative, but actual and imminent." *Id.* A preliminary injunction therefore cannot issue based merely upon the possibility of future injury or a plaintiff's subjective concern that challenged conduct may continue.

Plaintiffs' showing fall well short of this standard. Plaintiff Lafave asserts that he remains concerned that "Defendants, or persons acting in concert with them," may continue to access his systems and may be destroying evidence. (Lafave Aff. ¶ 51). He similarly identifies potential future harms including further compromise of confidential information, loss of trade-secret secrecy, continued account or device compromise, destruction of evidence, and loss of control over Plaintiffs' information. (*Id.* at ¶ 55-60, 67-68). Those assertions depend upon the same unsupported assumption underlying Plaintiffs' likelihood-of-success argument, namely, that the Voya Defendants were responsible for the alleged activity in the first instant and therefore pose a continuing threat.

There is no evidence supporting that assumption. As discussed above, Plaintiffs identify no Voya device, IP address, employee, investigator, vendor, communication, instruction, or other evidence connecting VFI and VIMC to any of the alleged unauthorized access, surveillance, tracking, or exfiltration. (*See generally* Lafave Aff. ¶¶ 20-51). More importantly, the sworn

evidence establishes that the conduct Plaintiffs fear is simply not being undertaken by VFI or VIMC. (*See generally* Peters Decl. ¶¶ 7-24).

Plaintiffs therefore identify no present conduct by the Voya Defendants that requires restraint and no imminent future conduct by the Voya Defendants that threatens Plaintiffs with irreparable injury. The possibility that some unidentified person may engage in future unauthorized activity does not establish an imminent threat of irreparable harm from VFI or VIMC.

Plaintiffs' allegations concerning trade secrets do not alter that conclusion. Although unauthorized disclosure of genuinely secret information may, under appropriate circumstances, support a finding of irreparable harm, the Second Circuit has rejected any categorical presumption of irreparable harm merely because trade secrets were alleged to have been misappropriated. *Faiveley*, 559 F.3d at 118-19. Plaintiffs have not demonstrated that either VCI or VIMC obtained allegedly proprietary information at all. And Plaintiffs have not demonstrated that either Defendant possesses, is using, or threatens to disclose it.

Accordingly, Plaintiffs' asserted injuries remain speculative as to the Voya Defendants and cannot support the extraordinary remedy of preliminary injunctive relief.

## IV. PLAINTIFFS' REQUEST FOR BROAD PROHIBITORY AND AFFIRMATIVE INJUNCTIVE RELIEF IS UNSUPPORTED BY THE RECORD AND EXCEEDS THE PROPER SCOPE OF RULE 65

Plaintiffs' proposed injunction goes beyond prohibiting future conduct. It also seeks affirmative relief requiring the Voya Defendants to identify, preserve, and sequester broad categories of information and materials, including copies of Plaintiffs' confidential and proprietary information allegedly obtained through unauthorized activity. (Lafave Aff. ¶¶ 63-64, Proposed Order ¶¶ 4-5).

This relief is unsupported by the record because it presupposes the very fact Plaintiffs fail to establish that the Voya Defendants obtained or possessed such information.

The sworn evidence establishes otherwise. The Voya Defendants did not obtain through unauthorized means Plaintiffs' source code, trade secrets, proprietary technology, technical information, patent-related materials, commercialization plans, credentials, account information, repository information, or other confidential information. (Peters Decl. ¶¶ 20, 22-24). Nor do they possess copies of Plaintiffs' allegedly confidential or proprietary materials obtained through the cyber intrusion, surveillance, tracking, or other unauthorized conduct alleged in this action. (*Id.* at ¶¶ 20-23).

An injunction requiring the Voya Defendants affirmatively to identify and sequester materials that Plaintiffs merely speculate they possess would not preserve the status quo. It would compel affirmative action based upon an unproven factual premise. To the extent the requested relief is mandatory, Plaintiffs must make the heightened showing applicable to mandatory preliminary injunctions. See *N.Y. Civil Liberties Union v. N.Y.C. Transit Auth.*, 684 F.3d 286, 294 (2d Cir. 2012); *Tom Doherty*, 60 F.3d at 33-34. Where as here, Plaintiffs fail to satisfy the ordinary preliminary injunction standard, and they fail to demonstrate clear or substantial likelihood of success sufficient to warrant mandatory relief.

Moreover, Plaintiffs' separate request for preservation relief is not a basis for extraordinary injunctive relief. Plaintiffs ask the Court to require the Voya Defendants to preserve and sequester materials supposedly generated through cyber intrusion, surveillance, tracking, and exfiltration, while failing to identify evidence that the Voya Defendants engaged in those activities or possess the resulting materials.

The Voya Defendants recognize and will comply with their preservation obligations arising from this litigation. But the existence of those ordinary obligations does not justify extraordinary injunctive relief premised upon speculation that the Voya Defendants possess evidence of conduct

in which they never participated. To the contrary, the Voya Defendants affirmatively deny participating in any of the alleged efforts to delete, overwrite, conceal, or destroy evidence. (Peters Decl. at ¶ 24).

Second, the prohibitory portions of Plaintiffs' proposed injunction are equally unsupported. Federal Rule of Civil Procedure 65(d) requires an injunction to "state its terms specifically" and "describe in reasonable detail…the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1). These requirements are substantive, not technical. *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974). An injunction must be sufficiently "specific and definite" to permit the enjoined party to ascertain from the four corners of the order precisely what conduct is prohibited or required. *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 143-44 (2d Cir. 2011). And critically, "an injunction must be more specific than a simple command that the defendant obey the law." *S.C. Johnson & Son, Inc. v. Clorox Co*., 241 F.3d 232, 240 (2d Cir. 2001); *see also Peregrine Myanmar Ltd. v. Segal*, 89 F.3d 41, 51 (2d Cir. 1996).

The aforementioned principle is particularly applicable here. Plaintiffs have not established any legal violation by either VFI or VIMC to which the requested injunction could be tailored. Much of Plaintiffs' requested relief effectively asks the Court to direct the Voya Defendants not to engage in conduct Plaintiffs characterize as unlawful, including unauthorized access to computer systems, acquisition or misuse of confidential information and trade secrets, unauthorized surveillance and tracking and destruction of evidence. (Lafave Aff. ¶¶ 61-64; Proposed Order ¶¶ 1-5). Yet, there is no evidence that the Voya Defendants ever engaged in, or presently threaten to engage in, any of the conduct. (Peters Decl. ¶¶ 16-24).

Accordingly, Plaintiffs have not established any basis for either the affirmative or prohibitory components of their proposed injunction. This Court should decline to impose

extraordinary equitable relief requiring the Voya Defendants to identify or sequester materials they do not possess, preserve evidence of misconduct in which they did not participate, or refrain from conduct that they have never undertaken and are not presently undertaking.

## V. THE BALANCE OF EQUITIES DOES NOT FAVOR IMPOSING EXTRAORDINARY INJUNCTIVE RELIEF UPON THE VOYA DEFENDANTS WHO HAD NO INVOLVEMENT IN THE ALLEGED CONDUCT

Plaintiffs contend that the balance of equities favors an injunction because the Voya Defendants have "no legitimate interest in unauthorized access" to Plaintiff's systems, accounts devices, confidential information, trade secrets, in destruction of evidence, or in misuse of Plaintiffs' proprietary information. (Ekeland Aff. ¶ 28, Pls.' Mem. at 11). That formulation, focused on whether the Voya Defendants have a legitimate interest in engaging in unlawful conduct, is inappropriate and sidesteps the actual issues presented to the Court. The question is not whether the Voya Defendants have a legitimate interest in engaging in unlawful conduct. They plainly do not. The actual question is whether Plaintiffs have demonstrated a sufficient factual basis for subjecting the Voya Defendants to extraordinary injunctive relief and the attendant consequences of a federal injunction. Plaintiffs have not.

The record establishes that the Voya Defendants did not issue Plaintiff Lafave's LTD policy, did not administer his LTD claim, did not receive claim-related information upon which Plaintiffs' theory of wrongdoing depends, and did not engage in the unauthorized computer access, surveillance, tracking, or acquisition of proprietary information alleged by Plaintiffs. (*See generally* Peters Decl.)

Against that evidence, the equities do not favor imposing broad prohibitory and affirmative obligations upon the Voya Defendants based solely upon Plaintiffs' speculation that the Voya Defendants were responsible for *unexplained* technical events.

Importantly, Plaintiffs cannot avoid this deficiency by arguing that an injunction should impose little to no burden because the Voya Defendants deny engaging in the prohibited conduct. The absence of legitimate conduct burdened by an injunction does not relieve Plaintiffs of their obligation to establish an evidentiary and legal basis for obtaining the injunction in the first place. See *N. Am. Soccer League,* 883 F.3d at 37 (setting forth the legal requirements for preliminary injunctive relief). Notably, preliminary injunctive relief is an "extraordinary and drastic" remedy, not a precautionary order entered against a defendant merely because the defendant maintains that it has done nothing wrong. See *Sussman*, 488 F.3d at 139.

Thus, the balance of the equities does not favor the requested relief.

## VI. THE PUBLIC INTEREST DOES NOT SUPPORT THE ENTRY OF AN INJUNCTION AGAINST THE VOYA DEFENDANTS BASED UPON SPECULATION

Plaintiffs also fail to demonstrate that the requested injunction is consistent with the public interest. In determining whether preliminary injunctive relief is warranted, the Court must consider the public consequences of the requested relief and ensure the "the public interest would not be disserved" by issuance of an injunction. *Salinger v. Colting*, 607 F.3d 68, 80 (2d Cir. 2010); see also Winter, 555 U.S. at 24 (courts must "pay particular regard for the public consequences in employing the extraordinary remedy of an injunction").

Plaintiffs make no meaningful showing that the public interest requires the extraordinary relief sought against the Voya Defendants. Their application focuses principally on their own alleged injuries and their desire to prevent future unauthorized access, surveillance, use of proprietary information, and destruction of evidence. But those are Plaintiffs' asserted private interests. They do not establish that the public interest requires preliminary injunctive relief against VFI and VIMC.

More fundamentally, the public interest does not favor imposing broad, contempt-backed injunctive restrictions upon parties absent evidence that they engaged in or threatened to engage in the conduct to be restricted. As demonstrated above, Plaintiffs have failed to connect VFI and VIMC to the alleged unauthorized activity. The extraordinary remedy of an injunction should not be imposed against parties based upon speculation as to their involvement.

Accordingly, Plaintiffs have not carried their burden of demonstrating that the public-interest factor supports the requested relief. In any event, because Plaintiffs have failed to demonstrate a likelihood of success on the merits or an actual or imminent threat of irreparable harm attributable to the Voya Defendants, their application fails irrespective of the public-interest factor. *See Slinger*, 607 F.3d at 75, n.5, 80; *Faiveley Transp*., 559 F.3d at 119-120.

## CONCLUSION

Based on the foregoing, Plaintiffs have failed to establish any basis for the extraordinary injunctive relief sought against Defendants Voya Financial, Inc. or Voya Investment Management Co, LLC. Plaintiffs' submission and the record contains no evidence connecting either Defendant to the alleged unauthorized access, surveillance, tracking, or misuse of Plaintiffs' information, and the sworn evidence establishes that neither Defendant engaged in or is presently engaged in any such conduct. Plaintiffs therefore cannot demonstrate a likelihood of success on the merits, imminent irreparable harm, or that the remaining equitable factors favor an injunction. Accordingly, Plaintiffs' application for a temporary restraining order and preliminary injunction should be denied in its entirety.

Date: September 2, 2026

Respectfully submitted,
s/Robert Pindulic

Robert Pindulic, Esq.
Mariam A. Hashmi, Esq.
White and Williams LLP
810 Seventh Avenue, Suite 500

New York, New York 10019
Phone: 212-244-9500
E-mail: pindulicr@whiteandwilliams.com
E-mail: hashmim@whiteandwilliams.com
*Attorneys for defendants Voya Financial, Inc., and Voya Investment Management Co. LLC*

**Certificate Of Compliance With Local Civil Rule 7.1**

This is to certify that memorandum of law does not exceed 8,750 words and does not exceed 25 pages. There are 6,556 words in the memorandum of law according to the Word word-processing program that I used to create the document.

Date: September 2, 2026

Respectfully submitted,
s/Robert Pindulic

Robert Pindulic, Esq.
Mariam A. Hashmi, Esq.
White and Williams LLP
810 Seventh Avenue, Suite 500
New York, New York 10019
Phone: 212-244-9500
E-mail: pindulicr@whiteandwilliams.com
E-mail: hashmim@whiteandwilliams.com
*Attorneys for defendants Voya Financial, Inc., and Voya Investment Management Co. LLC*