**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MICHAEL LAFAVE, and CETTE AI CORPORATION,<br><br>Plaintiffs,<br><br>-against-<br><br>VOYA FINANCIAL, INC., VOYA INVESTMENT MANAGEMENT CO. LLC, RELIASTAR LIFE INSURANCE COMPANY, DOE THIRD-PARTY ADMINISTRATOR, and DOES 1–12, inclusive,<br><br>Defendants. | **FIRST AMENDED COMPLAINT**<br>**JURY TRIAL DEMANDED**<br><br>**Case No. 26-cv-5375 (LJL)**<br><br>**Hon. Lewis J. Liman** |

Plaintiffs Michael Lafave and Cette AI Corporation (collectively, "Plaintiffs"), by and through their undersigned attorneys, allege as follows:

## INTRODUCTION

1. This action arises from a targeted and premeditated series of cyber intrusions, unauthorized account access, appropriation of confidential proprietary intellectual property, including trade secrets, and surveillance directed at Plaintiffs.

2. Plaintiff Lafave is an artificial-intelligence engineer, entrepreneur, and founder of Plaintiff Cette AI Corporation. Through Cette AI, he developed proprietary technologies and confidential research materials, including advanced artificial-intelligence systems, quantum-computing-related research, technical architectures, commercialization plans, patent-related materials, and associated source-code repositories.

3. Upon information and belief, beginning on or about July 1, 2025, one or more Defendants planned, carried out, directed, facilitated, benefited from, or used information obtained through a series of cyber intrusions targeting Plaintiffs' computers, accounts, networks, and repositories.

4. Upon information and belief, Voya operates AI entities that would materially benefit from Plaintiffs' stolen intellectual property.

5. Upon information and belief, from approximately July 1, 2025, one or more Defendants surveilled Plaintiff and illegally accessed his devices, operating systems, home networks, cloud-connected accounts, and GitHub repositories containing Plaintiffs' valuable intellectual property.

6. Upon information and belief, one or more Defendants used sophisticated remote-access capabilities to obtain or attempt root-level access without triggering ordinary security mechanisms. These attacks required prior knowledge of Plaintiff's device environment, including the type of personal device he used, his operating system, his location, and related metadata.

7. Plaintiff Lafave had previously submitted PDF documents and other materials in connection with an insurance claim to Defendants. These materials contained device and operating-system metadata sufficient to assist in profiling his technical environment.

8. On or about Christmas Day 2025, Plaintiff Lafave was staying at a remote cottage in Ontario, Canada. Plaintiff Lafave had provided this location to Defendants. Upon information and belief, at this time, Plaintiff Lafave was subjected to a series of cyber intrusions. Upon information and belief, the attacks, as executed, required close physical proximity by the

attackers to Plaintiff Lafave's devices. Upon information and belief, this required surveillance or monitoring before the intrusions were carried out.

9. Upon information and belief, on or about January 9, 2026, one or more Defendants illegally accessed Plaintiffs' GitHub repository and exfiltrated Plaintiffs' valuable intellectual property.

10. Plaintiffs bring this action for injunctive relief, damages, and to protect their valuable intellectual property, confidential information, trade secrets, research materials, and related property from further use, dissemination, or exploitation.

11. In the declaration submitted with Defendants' September 2, 2026 opposition to Plaintiffs' Motion for a Preliminary Injunction, Defendants state, upon information and belief, that ReliaStar Life Insurance Company ("ReliaStar") issued the group long-term-disability ("LTD") policy under which Lafave submitted his claim.[1] Defendants further state, upon information and belief, that an unnamed third-party administrator ("TPA") was responsible for administering, evaluating, and adjudicating Lafave's LTD claim.

12. Upon information and belief, ReliaStar and/or the Doe TPA received, maintained, controlled, transmitted, or had access to claim-related information that Lafave supplied for LTD-claim purposes, including information concerning his address, travel, medical condition, authorizations, communications, and supporting materials.

13. The presently available evidence establishes concrete indicators of unauthorized access, including suspicious network-device activity, unusual root-account activity, unauthorized GitHub migration events involving repositories containing Plaintiffs' proprietary work, an Apple

---

[1] Defs.' Mem. of Law in Opp'n to Pls.' Mot. for a Temporary Restraining Order**,** *Lafave v. Voya Fin., Inc.*, No. 1:26-cv-05375 (LJL), ECF No. 17 (S.D.N.Y. Sept. 2, 2026).

safety alert reporting an unknown item moving with Lafave, and an unauthorized email or mailbox search for "SDNY."

14. Plaintiffs bring this action for compensatory and equitable relief, including preservation, non-use, and non-disclosure relief to protect Plaintiffs' confidential information, trade secrets, research materials, and related property.

## JURISDICTION AND VENUE

15. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, and the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836.

16. This Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over Plaintiffs' New York-law claims because they form part of the same case or controversy.

17. This Court has personal jurisdiction over Voya Financial, Inc. ("VFI") because VFI maintains its principal place of business in New York and transacts substantial business in New York. Plaintiffs' claims arise from and relate to VFI's New York-based decision-making and oversight concerning claim handling and security practices alleged herein.

18. This Court has personal jurisdiction over Voya Investment Management Co. LLC ("VIMC") because, upon information and belief, it transacts business in New York and has its principal place of business in New York.

19. This Court has personal jurisdiction over ReliaStar because, upon information and belief, ReliaStar transacts insurance-related business in New York and issued the group long-term-disability policy under which Plaintiff Lafave submitted Claim No. 1202568. ReliaStar issued the group LTD policy under which Lafave submitted Claim No. 1202568, and Plaintiffs' claims arise from and relate to ReliaStar's alleged claim-related activity, including its receipt,

maintenance, control, transmission, or access to claim-related information that Lafave supplied for LTD-claim purposes, and the alleged use, disclosure, or availability of that information in connection with the matters set forth in this Complaint.

20. Venue is proper in this District under 28 U.S.C. § 1391(b) because Voya Financial, Inc. and Voya Investment Management Co. LLC maintain their principal places of business in this District and because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

## PARTIES

21. Plaintiff Michael Lafave is an individual who personally developed, possessed, and controlled confidential research materials, technical architectures, source code, patent-related materials, and proprietary business information relevant to this action.

22. Plaintiff Cette AI Corporation is a Delaware corporation founded by Lafave to commercialize proprietary artificial-intelligence, quantum-computing-related, and environmental-infrastructure technologies.

23. Plaintiffs have suffered and continue to face injury because of unauthorized access and exfiltration relating to their proprietary technology, trade secrets, patent strategy, commercialization plans, and corporate opportunities.

24. Defendant VFI is a Delaware corporation with its principal place of business at 230 Park Avenue, New York, New York 10169.

25. Defendant VIMC is a Delaware limited liability company with its principal place of business at 230 Park Avenue, New York, New York 10169.

26. Defendant ReliaStar Life Insurance Company is a Minnesota-domiciled stock life insurance company with its principal place of business in Minneapolis, Minnesota. Upon

information and belief, ReliaStar is a wholly owned subsidiary of Voya Holdings Inc., which is in turn a wholly owned subsidiary of Voya Financial, Inc. ReliaStar is the group insurer that issued the long-term-disability policy under which Plaintiff Lafave submitted Claim No. 1202568.

27. Defendant Doe Third-Party Administrator is the presently unidentified entity that Defendants assert was responsible for administering, evaluating, and adjudicating Lafave's LTD claim. Plaintiffs do not presently know the Doe TPA's identity, principal place of business, claim-system custodians, or the scope of its access to Lafave's claim information. Plaintiffs will amend this Complaint promptly to substitute the Doe TPA's true name when it is ascertained through discovery or otherwise. Doe TPA purposefully availed itself of New York by administering Claim No. 1202568 for a New York-based insurer group and communicating with New York custodians, giving rise to the claims herein.

28. Defendants Does 1–12 are persons or entities presently unknown who participated in, directed, assisted, benefited from, or are otherwise legally responsible for the acts alleged herein. Plaintiffs will amend this Complaint as their identities are ascertained. Plaintiffs will seek discovery from Defendants and third parties, including claim-platform custodians, forensics vendors, investigators, and network-service providers, to identify Does 1–12 and Doe TPA, each of whom acted as agents, ostensible agents, alter egos, or co-conspirators of one or more Defendants.

## BACKGROUND

### Plaintiffs' Proprietary AI and Quantum Computing Technology

29. Plaintiff Lafave is an artificial intelligence engineer and founder of Cette AI Corporation, an enterprise focused on artificial intelligence, quantum computing-related technologies, and environmental infrastructure.

30. Plaintiffs' proprietary research and development included computer-aided designs and specifications for a Fluxonium qubit processor known as Coltrane, together with related research concerning superconducting processors, sensor applications, quantum architectures, and commercialization pathways. During the period of the cyber intrusions, the patent application for quantum technology and biofuels was substantially prepared, and Plaintiffs intended to scale the technology from material sensor applications toward quantum-as-a-service, or QaaS, offerings. Upon information and belief, the targeted confidential materials included patent-related materials, technical designs, research documentation, source code, business plans, and other proprietary information concerning Coltrane and related superconducting processor research.

31. One of Plaintiffs' core systems, and a commercially significant asset of Plaintiff Cette AI, was an artificial-intelligence platform internally referred to as ok_computer.

32. Plaintiffs' work included confidential model architectures, research methodologies, source code, technical specifications, product concepts, commercialization strategies, and financial analyses.

33. Plaintiffs' technology was designed for cross-domain application, including infrastructure, materials science, engineering, and related fields.

34. Before the events described herein, Cette AI had secured a strategic collaboration and licensing arrangement with a national real estate design company that contemplated more

than $850,000 in year-one funding, additional annual licensing revenue thereafter, and continuing ownership of the developed intellectual property by Cette AI.

35. Plaintiffs' proprietary materials were maintained on computing devices, private repositories, and related accounts under his control, and Plaintiffs used password protections, authentication safeguards, and restricted-access environments to maintain their confidentiality.

36. While certain high-level descriptions or demonstrations of some outputs had appeared publicly, the underlying architecture, implementation methods, datasets, repositories, patent-related materials, and product development materials at issue here were not publicly disclosed.

37. Plaintiffs also maintained confidential product development materials identifying approximately thirty-eight additional products or product lines that Plaintiffs believed ok_computer could deliver or accelerate. These materials reflected Plaintiffs' internal research, commercialization strategy, technical roadmap, and anticipated regulatory and industry-validation pathways, including potential applications requiring laboratory validation and submission to standards-setting or regulatory bodies such as ASTM, the FAA, DOT, or similar organizations. Plaintiffs' internal commercialization thesis was that ok_computer could use trained models and related artificial-intelligence systems to materially compress product-development timelines, reducing work that could otherwise require years of conventional laboratory research into substantially shorter periods of model-driven development, laboratory validation, and standards or regulatory submission.

**Plaintiff Lafave Provides Information to Defendants**

38. On August 7, 2023, an SUV struck Plaintiff Lafave while he was driving his motor vehicle in Denver, Colorado, through no fault of Plaintiff's.

39. The accident left Plaintiff Lafave with a condition that materially impaired his ability to perform cognitively demanding work.

40. On July 7, 2025, Plaintiff Lafave filed a claim for long-term disability benefits with Voya. Upon information and belief, ReliaStar Life Insurance Company was the group insurer associated with that claim, Claim Number 1202568. Defendants have stated that an unnamed third-party administrator was responsible for administering, evaluating, and adjudicating the claim; Plaintiffs refer to that presently unidentified entity as the Doe TPA.

41. In August 2025, Voya approved Plaintiff Lafave's long-term disability claim.

42. On December 18, 2025, Plaintiff Lafave's physician completed an Attending Physician's Statement saying that Plaintiff Lafave was restricted from continuous computer work, cognitive labor, and team meetings, and was most likely at maximal medical improvement and disabled for life. This information materially increased Voya's potential claim exposure into the millions of dollars because it indicated that Plaintiff Lafave's disability was not temporary and involved a substantial long-term benefit obligation.

43. On December 23, 2025, Plaintiff Lafave notified Voya that effective January 2, 2026, his mailing address would switch from Colorado to a family cottage in rural Braeside, Ontario.

44. Plaintiff Lafave had also signed a medical-information release or similar authorization in connection with his disability claim that, upon information and belief, gave Voya broad access to treatment-related information, appointments, and related travel information. Upon information and belief, and consistent with their alleged roles in insuring or administering the claim, ReliaStar and/or the Doe Third-Party Administrator received,

maintained, controlled, transmitted, or had access to some or all of that claim-related information.

45. Within approximately seven days of receiving information that Plaintiff Lafave was most likely permanently disabled, and within approximately two days of Plaintiff Lafave disclosing the rural Ontario cottage address to Voya, Plaintiff Lafave's network and devices began exhibiting indicators of unauthorized access at the rural Braeside, Ontario cottage.

Plaintiff Lafave Discloses His Location and Technologies to Defendants

46. In or around July 2025, Plaintiff Lafave communicated with his Voya claims manager, sending them an economist report on the value of Plaintiff Cette AI's technology and business opportunities. The report values a subset of Cette AI's portfolio at potentially $50 million to $100 million. The subset includes only one product line, one customer relationship or opportunity, and only a subset of the broader ok_computer SaaS platform. Through Plaintiff Lafave's communications with Voya, Voya and its agents received sensitive information concerning Plaintiff Lafave's disability claim, professional background, technical work, economic losses, proprietary technology, valuation evidence, and personal circumstance. Upon information and belief, ReliaStar and/or the Doe TPA received, maintained, controlled, transmitted, or had access to claim-related information supplied for LTD-claim purposes, including communications and supporting materials concerning Plaintiff Lafave's condition, address, travel, and claim.

47. The report's valuation range was conservative. The report valued only a subset of Cette AI's portfolio and applied an approximately 10x revenue multiple. This multiple was intentionally conservative for a technology company and below valuation multiples often associated with high-growth technology businesses, including artificial intelligence and

software-as-a-service companies. The report also did not attempt to value the full ok_computer platform, Cette AI's broader product roadmap, additional product lines, source-code repositories, patent-related materials, quantum-computing research, or other proprietary assets. Accordingly, the report materially understated the full commercial value of Plaintiffs' technology portfolio.

48. Plaintiff Lafave provided this information in the context of an insurance benefits claim and for claim administration purposes only. Plaintiffs did not authorize Defendants to use claim communications, attachments, metadata, or other information derived from those communications to profile his devices, identify his location, access his accounts, monitor him, or obtain Plaintiffs' proprietary business or technical information.

49. Upon information and belief, Voya was the only entity to which Plaintiff Lafave directly disclosed the cottage address during the relevant period. Voya occupied a unique position because it possessed Plaintiff Lafave's rural Ontario address, his disability status, information concerning his travel and treatment needs, and valuation materials describing the commercial significance of Plaintiffs' proprietary technology. Upon information and belief, ReliaStar and/or the Doe TPA may have received or had access to claim-related information through their role in the insurance or administration of Plaintiff Lafave's LTD claim. Other than Plaintiff Lafave's mother, no one else knew the location of the cottage and knew that Plaintiff Lafave would be there. Plaintiffs are not aware of any unrelated third party that possessed this same combination of information, technical motive, operational incentive, and location-specific knowledge that Defendants possessed.

**Network Intrusion Events**

50. On or about July 1, 2025, Plaintiff Lafave applied for long-term disability.

51. In or around mid-August of 2025, Plaintiff Lafave was approved for long-term disability, which was dated retroactively to July 7, 2025.

52. Beginning on or about December 25, 2025, Plaintiff Lafave's network and devices began exhibiting unusual and unexplained behavior. On December 25, 2025, at approximately 11:44 a.m. ET, a remote root login occurred on Lafave's MacBook Pro, and within approximately three minutes, at least two unauthorized machine-to-machine devices appeared on the cottage network; on December 26, 2025, Lafave observed extraordinary dropped-packet activity and extender spoofing; from January 6–12, 2026, thousands of high-speed root bursts occurred; on January 9, 2026, he checked GitHub and saw no export logs, but later GitHub records showed two migration.create events involving multiple repositories.

53. Plaintiff Lafave identified previously unknown devices on his network and preserved logs and related records concerning those events.

54. Upon information and belief, on December 25, 2025, at least two unauthorized machine-to-machine devices accessed his network.

55. Plaintiff Lafave submitted evidence of the breach to the Ontario Provincial Police within hours on Christmas Day.

56. On or about December 26, 2025, Plaintiff Lafave observed activity consistent with an attempt to erase, overwrite, or destroy evidence of the intrusion. Plaintiff Lafave preserved records reflecting more than three billion dropped packets associated with a non-public-facing IP address. Plaintiffs allege that this volume of dropped-packet activity is extraordinary and inconsistent with ordinary residential network activity, particularly at a rural location, and is consistent with an effort to overwrite, purge, or obscure evidence of the intrusion shortly after Plaintiff Lafave reported the breach to law enforcement. Plaintiff Lafave also

observed evidence that a Wi-Fi extender associated with the residence had been spoofed or impersonated. Modem records and Fing application records reflected two or more extender-like devices on the network even though only one authorized extender was present. Upon information and belief, the unauthorized device or devices used MAC addresses configured to resemble the legitimate extender's MAC address, further indicating that the intrusion involved deliberate spoofing and proximity-based network access.

57. Upon information and belief, Defendants attempted to exploit Plaintiffs' Bell modem's use of NVRAM so that records, logs, MAC-address information, and other network artifacts would be overwritten before Plaintiffs could preserve them.

58. Plaintiffs further allege that the scale and character of the December 26, 2025, activity would have required specialized equipment, infrastructure, or machine-to-machine capabilities not ordinarily present in a rural residential network environment, and not sold to retail consumers.

59. Plaintiff Lafave searched root-login history on his computer and found unusual root-account activity indicative of unauthorized access.

60. On or about January 6, 2026, and again on or about January 12, 2026, Plaintiff Lafave observed thousands of rapid "bursts" associated with a remote root account that had breached his Apple MacBook Pro. These bursts occurred at extreme speed, with many events occurring within the same second, and included thousands of automated root-login or root-account events inconsistent with ordinary consumer-device behavior. The volume, speed, and character of this activity indicates that Plaintiff Lafave's device was subject to unauthorized remote access and automated exploitation.

61. On or about January 12, 2026, Plaintiff Lafave discovered a record showing that a remote root login had occurred at approximately 11:44 a.m. Eastern Time on December 25, 2025, approximately three minutes before Plaintiff Lafave was notified that new, unauthorized devices had joined his network. The close timing between the remote root login and the appearance of new devices on the network is consistent with unauthorized remote access and coordinated intrusion activity by Defendants.

62. By January 15, 2026, the interference with Plaintiff Lafave's devices had increased. Repeated attacks known as "deauths" were used to breach his network, and Plaintiff Lafave observed root-directory modifications that he did not perform. Plaintiff Lafave later observed that his 2015 MacBook Air had also been tampered with.

**Unauthorized GitHub Repository Exfiltration**

63. Plaintiff Lafave maintained proprietary code and related materials in GitHub repositories.

64. On or about January 9, 2026, Plaintiff Lafave checked his GitHub account to determine whether any repositories, code, or related materials had been exported, migrated, or otherwise removed without authorization. At that time, Plaintiff Lafave did not observe any export or migration logs indicating that his code had been taken.

65. Upon information and belief, Defendants, without authorization, hijacked an authenticated session through a mechanism that bypassed Plaintiff Lafave's revocation of personal access tokens and SSH access.

66. Plaintiff Lafave had revoked personal access tokens and SSH access before the suspicious GitHub-related activity, making the subsequent access inconsistent with ordinary, authorized repository use. Upon information and belief, Defendants used session hijacking,

credential misuse, device compromise, carrier-linked access, or another unauthorized mechanism to access or manipulate repositories containing Plaintiffs' proprietary information.

67. GitHub-related records reviewed by Plaintiffs reflect deletion of public key "cette saas" and two migration.create events involving repositories including web-site, ware_roads, carbon_negative_concrete, HydroGrid, biofuel, coltrane, daily_canslim, dorsey_daily, ok_computer, and open_bb.

68. Plaintiff Lafave did not authorize those migration events.[2]

69. The two migration events appeared to share the same GitHub request_id, which Plaintiffs allege is anomalous because separate authorized migration events would ordinarily be expected to have distinct request identifiers. The shared request_id is consistent with a single compromised authenticated session.

70. Plaintiff Lafave revoked personal access tokens and SSH credentials after the initial compromise, yet later discovered that the repositories had nonetheless been migrated.

71. Plaintiff Lafave later discovered additional evidence concerning the extent, cost, and sophistication of the malware and unauthorized access affecting his MacBook Pro, including evidence suggesting that the GitHub environment may have been accessed or manipulated through the compromised device or an authenticated session rather than through an ordinary export visible to him at the time.

---

[2] A migration event is the process of moving data, applications, or workloads from one system, server, or environment to another (e.g., between data centers, cloud regions, or machines). It typically involves transferring both the underlying data and its operational state so the system can continue functioning in the new location.

**Physical Surveillance**

72. Upon information and belief, Defendants placed Plaintiff Lafave under physical surveillance or location-based monitoring. The intrusion indicators, including the extraordinary packet activity associated with a non-public-facing IP address, repeated de-authentication attacks, Wi-Fi extender spoofing, and the later Apple anti-stalking alert discussed below, were consistent with activity requiring close physical proximity to Plaintiff Lafave, his devices, or his network.

73. On or about January 27, 2026, Plaintiff Lafave received an Apple alert indicating that an unknown device or item was moving with him. Upon information and belief, the alert is part of Apple's anti-stalking safety features and is tied to firmware-level functionality that ordinary users cannot edit or alter. The alert was triggered after Plaintiff Lafave moved from the Ontario cottage to a hotel, supporting the inference that an unauthorized device tracked him from the cottage to the hotel.

74. Upon information and belief, the relevant anti-stalking algorithm is triggered when changes in geography coincide with movement of an unknown device or item with the user. Plaintiff Lafave did not authorize any person to track him from the cottage to the hotel. The timing and character of the alert support an inference of stalking, surveillance, or location tracking after Plaintiffs' counsel sent a cease-and-desist and preservation communication on or about January 19, 2026 discussing the allegations contained in this Complaint.

75. On or about January 28, 2026, Plaintiff Lafave discovered that someone had searched his email account for "SDNY." Plaintiff Lafave did not conduct that search. This search is probative because a person concerned about litigation exposure in the Southern District of New York would have reason to search for "SDNY."

**Confidentiality, Value, and Commercial Significance of Plaintiffs' Systems**

76. Plaintiffs' systems contained highly sensitive commercial and personal information, including valuable intellectual property, confidential source code, research notes, technical frameworks, product-development materials, commercialization strategies, patent-related materials, financial analyses, and legal communications.

77. Many of Plaintiffs' product concepts and related materials had not yet been publicly disclosed or fully protected through formal intellectual-property filings.

78. Those materials derived independent economic value from their secrecy, originality, and the time, expertise, and resources required to develop them.

79. Plaintiffs' proprietary technologies and patent-related materials include product families and research relating to carbon-negative concrete, HydroGrid or other polymer-asphalt and permeable-pavement infrastructure solutions, carbon-negative fuels and biofuel systems, and the Coltrane superconducting quantum processor. The polymer-asphalt infrastructure solution is currently the furthest-developed product among those technologies.

80. Plaintiffs' proprietary technologies have substantial commercial potential, including potential licensing, commercialization, infrastructure, materials, power, water, advanced-materials, and quantum-computing applications. Upon information and belief, the economist report provided to Voya valued only a narrow subset of the portfolio at approximately $50 million to $100 million and did not capture the full value of Plaintiffs' broader ok_computer platform, related neural-network architectures, product families, patent strategy, or Coltrane-related quantum-computing research. Plaintiffs allege that the unauthorized access to, exfiltration of, and misuse of those materials involves damages in the multi-million-dollar range, the precise amount of which will be determined through discovery and expert analysis.

**Defendants' Knowledge, Motive, and Opportunity**

81. Through the disability-claim process, Voya possessed detailed knowledge of Plaintiff Lafave, including his location, devices, and travel-related information. Upon information and belief, ReliaStar and/or the Doe TPA received, maintained, controlled, transmitted, or had access to claim-related information in connection with the insurance or administration of Plaintiff Lafave's LTD claim.

82. Voya also possessed knowledge, in part from Plaintiff Lafave's disclosure of the Economist's Report discussed above, that Plaintiff Lafave had valuable technology and business opportunities affected by his injury. Upon information and belief, ReliaStar and/or the Doe TPA may have received or had access to claim-related communications or supporting materials in the course of claim administration.

83. Upon information and belief, Defendants had strategic and financial reasons to be interested in Plaintiffs' technology. Voya Investment Management operates investment and machine-intelligence functions, including an Equity Machine Intelligence group focused on quantitative investment analysis.[3] Voya-affiliated investment products include the Voya Infrastructure, Industrials and Materials Fund, which focuses on infrastructure, industrials, and materials sectors, including areas such as construction, power, water, transportation, and related industries.[4] Those sectors overlap with Plaintiffs' product families, including carbon-negative concrete, HydroGrid or related infrastructure technologies, biofuel systems, advanced materials,

---

[3] Voya Investment Management, *Machine Intelligence: Opportunistic U.S. Equity*, VOYA FINANCIAL, https://institutional.voya.com/investment-capabilities/machine-intelligence-ai-driven/machine-intelligence-opportunistic-us-equity (last visited May 19, 2026).

[4] Voya Financial, *Voya Infrastructure, Industrials and Materials Fund*, VOYA FINANCIAL, https://individuals.voya.com/product/closed-end-fund/profile/voya-infrastructure-industrials-and-materials-fund (last visited May 19, 2026).

and the Coltrane quantum processor. Plaintiffs allege that ok_computer's ability to evaluate, design, and validate materials and infrastructure technologies provides an informational advantage to investment-management personnel, fundamental analysts, portfolio managers, corporate-development personnel, or others evaluating companies and technologies in those sectors.

84. Plaintiffs further allege that the technology targeted in the intrusion was not merely general business information or ordinary financial data. ok_computer is a deep-learning and scientific-computing platform integrating, among other things, equivariant foundation models, generative score networks, physics-informed neural surrogates, quantum eigensolvers, and agentic orchestration for materials science, chemical engineering, infrastructure, and quantum-computing applications.

**Forensic Indicators, Third-Party Evidence, and Attribution**

85. Plaintiff Lafave preserved system logs, screenshots, audit history records, and related technical materials reflecting the intrusion events.

86. Plaintiff Lafave reported the computer intrusions to the Ontario Provincial Police forensic unit, which determined that probable indictable offenses had occurred, assigned a detective, and took a formal statement from him. Plaintiff Lafave also sought regulatory review through the California Department of Insurance, which opened an investigation on or about January 12, 2026.

87. Based on the timing of the events, the confidential information in Voya's possession, the claim-related information that, upon information and belief, ReliaStar and/or the Doe TPA received, maintained, controlled, transmitted, or had access to, the targeted nature of the activity, the apparent value of the compromised materials, the location-specific character of

the intrusions, and the presently known forensic indicators, Plaintiffs allege, upon information and belief, that the intrusion was carried out by one or more Defendants or by persons acting at their direction, on their behalf, for their benefit, or using information obtained through one or more Defendants.

**Cease and Desist & Preservation Notices to Defendants**

88. On January 19, 2026, Plaintiff Lafave's counsel sent Voya a cease and desist letter and a preservation notice stating that Voya and/or persons acting on its behalf may have been involved in or benefited from a cyber intrusion affecting Plaintiff Lafave and Plaintiffs' proprietary materials.

89. That notice demanded that Voya implement a litigation hold covering its own records and the records of officers, employees, agents, contractors, investigators, vendors, and third parties acting at Voya's direction or on its behalf.

90. On March 16, 2026, Voya responded through a Senior Claims Consultant on Voya Employee Benefits letterhead, referencing disability-claim identifiers including Claim Number 1202568, and stating that Voya retained email, documents, and other data in accordance with ordinary retention policies that generally required maintenance of records for at least seven years. Voya did not identify the TPA that had handled the claim or the custodians of claim-related information, and it made no mention of the cyber-intrusion allegations against Voya.

**Consequences of the Intrusion**

91. The intrusion caused substantial and ongoing harm to Plaintiffs, including loss of confidentiality of proprietary materials, compromise of highly sensitive personal and medical information, disruption to Plaintiff Lafave's work and recovery, harm to Cette AI Corporation's

proprietary and commercial interests, and the need to devote significant time and expense to investigation, preservation, mitigation, and security remediation.

92. As a direct and proximate result of the intrusion, Plaintiffs suffered loss well in excess of $5,000 during a one-year period, including costs incurred to investigate the intrusion, respond to the offense, assess and restore system integrity, preserve evidence, retain or consult forensic and technical assistance, secure accounts and repositories, and implement remedial security measures.

93. Plaintiffs have suffered additional economic harm, including loss of control over confidential and proprietary materials, uncertainty regarding the scope of exfiltration and downstream use of their technology and data, and diminution in the secrecy, exclusivity, and value of their intellectual property.

94. The full extent of Plaintiffs' damages will be determined at trial.

95. The intrusions have caused Plaintiff Lafave substantial emotional distress, including anxiety, fear, and ongoing concern regarding the security of his information, devices, home, and person.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### Violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(2)(C)

96. Plaintiffs repeat and reallege Paragraphs 1 through 95.

97. Plaintiffs' computers, devices, network systems, cloud-connected accounts, GitHub repositories, and associated data-storage and communications facilities were protected computers within 18 U.S.C. § 1030(e)(2), because they were used in or affected interstate and foreign commerce and communication.

98. One or more Defendants intentionally accessed one or more protected computers without authorization and thereby obtained information, including confidential research materials, proprietary artificial-intelligence development data, source-code and repository information, personal records, medical information, business information, and other sensitive data belonging to or controlled by Plaintiffs.

99. Such access was not authorized by Plaintiffs. Plaintiffs suffered damage and loss as a result, including reasonable response, investigation, damage-assessment, preservation, account-security, and remediation costs.

100. Plaintiffs' losses exceeded $5,000 in value during a one-year period. Plaintiffs seek compensatory damages, injunctive relief, equitable relief, costs, and all other available relief under 18 U.S.C. § 1030(g). Losses include incident-response labor, paid forensic consultation, device/network hardware replacement, and account-security remediation, aggregating well over $5,000 in a one-year period.

**SECOND CAUSE OF ACTION**
**Violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(5)(A)**

101. Plaintiffs repeat and reallege Paragraphs 1 through 100.

102. One or more Defendants knowingly caused the transmission of programs, information, code, commands, signals, requests, authentication attempts, network traffic, machine-to-machine communications, session activity, repository commands, or other electronic instructions to one or more of Plaintiffs' protected computers without authorization.

103. As a result of those transmissions, one or more Defendants intentionally caused damage without authorization, including impairment to the integrity or availability of Plaintiffs' data, programs, systems, accounts, repositories, and information.

104. Plaintiffs suffered loss exceeding $5,000 in value during a one-year period and are entitled to compensatory damages, injunctive relief, equitable relief, costs, and all other available relief. Losses include incident-response labor, paid forensic consultation, device/network hardware replacement, and account-security remediation, aggregating well over $5,000 in a one-year period.

**THIRD CAUSE OF ACTION**
**Violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(5)(B)**

105. Plaintiffs repeat and reallege Paragraphs 1 through 104.

106. One or more Defendants intentionally accessed one or more of Plaintiffs' protected computers without authorization and, as a result, recklessly caused damage, including compromise of system integrity and security; unauthorized root-level or administrative activity; unauthorized repository activity; suspected data exfiltration; interference with Plaintiffs' ability to use and control their systems securely; and impairment of the secrecy and value of Plaintiffs' proprietary materials.

107. Plaintiffs suffered loss exceeding $5,000 in value during a one-year period and are entitled to compensatory damages, injunctive relief, equitable relief, costs, and all other available relief. Losses include incident-response labor, paid forensic consultation, device/network hardware replacement, and account-security remediation, aggregating well over $5,000 in a one-year period.

**FOURTH CAUSE OF ACTION**
**Violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(5)(C)**

108. Plaintiffs repeat and reallege Paragraphs 1 through 107.

109. One or more Defendants intentionally accessed Plaintiffs' protected computers without authorization and thereby caused damage and loss, including impairment to the integrity or availability of data, programs, systems, and information; compromise of device and network security; unauthorized GitHub repository activity; loss of control over confidential materials; and reasonable response, damage-assessment, preservation, and remediation costs.

110. Plaintiffs' losses exceeded $5,000 in value during a one-year period. Plaintiffs seek compensatory damages, injunctive relief, equitable relief, costs, and all other available relief under 18 U.S.C. § 1030(g).

**FIFTH CAUSE OF ACTION**
**Misappropriation of Trade Secrets Under the Defend Trade Secrets Act, 18 U.S.C. § 1836**

111. Plaintiffs repeat and reallege Paragraphs 1 through 110.

112. Plaintiffs owned, possessed, or controlled trade secrets within 18 U.S.C. §§ 1836 and 1839(3), including proprietary artificial-intelligence systems; the ok_computer platform; technical and neural-network architectures; research materials; product concepts; commercialization strategies; patent-related materials; materials-science and chemical-engineering models; quantum-computing research; source code; repository contents; and related confidential proprietary information.

113. Those trade secrets derived independent economic value from not being generally known to or readily ascertainable through proper means by persons who could obtain economic value from their disclosure or use. Plaintiffs took reasonable measures to keep them secret, including restricting access, maintaining password and authentication protections, limiting disclosure, and using private accounts and repositories. Measures included multi-factor

authentication, revocation of personal access tokens and SSH credentials, private repositories with limited collaborators, and nondisclosure of repository locations.

114. The trade secrets were related to products and services used in, or intended for use in, interstate and foreign commerce.

115. One or more Defendants acquired Plaintiffs' trade secrets by improper means, including through unauthorized access to Lafave's computer systems, accounts, devices, repositories, and data. Upon information and belief, Defendants disclosed, used, retained, or intended to use Plaintiffs' trade secrets without Plaintiffs' consent to obtain commercial, competitive, financial, or strategic advantages.

116. Defendants' conduct constitutes misappropriation under the DTSA. Plaintiffs have suffered actual loss, loss of secrecy and exclusivity, diminished value, and other economic harm, and Defendants have been unjustly enriched. Plaintiffs seek injunctive relief, damages, exemplary damages for willful and malicious misappropriation as appropriate, fees as authorized by law, and other available relief.

## SIXTH CAUSE OF ACTION
## Misappropriation of Trade Secrets Under New York Common Law

117. Plaintiffs repeat and reallege Paragraphs 1 through 116.

118. Plaintiffs possessed protectable trade secrets, including the trade-secret categories described above. The information was confidential, not generally known in the industry, and provided Plaintiffs with independent economic value and competitive advantage by virtue of its secrecy.

119. One or more Defendants wrongfully acquired, used, disclosed, retained, or threatened to use Plaintiffs' trade secrets without authorization and through improper means.

Plaintiffs have suffered damages including loss of secrecy, loss of exclusivity, diminution in value, lost commercial opportunity, and other economic harm.

**SEVENTH CAUSE OF ACTION**
**Trespass to Chattels Under New York Common Law**

120. Plaintiffs repeat and reallege Paragraphs 1 through 119.

121. Lafave owned and possessed computer systems, network infrastructure, accounts, repositories, and stored digital data. One or more Defendants intentionally and without authorization interfered with that property by accessing computer systems, connecting or causing unauthorized devices to connect, and transmitting data to or from those systems.

122. Defendants' conduct impaired the condition, quality, integrity, availability, and value of Plaintiffs' systems and data and required investigation and remediation. Plaintiffs suffered damages as a direct and proximate result.

**EIGHTH CAUSE OF ACTION**
**Unfair Competition Under New York Common Law**

123. Plaintiffs repeat and reallege Paragraphs 1 through 122.

124. One or more Defendants acted in bad faith by misappropriating Plaintiffs' labor, skill, expenditures, and proprietary information through unauthorized access to Plaintiffs' systems and acquisition of confidential materials, thereby seeking an unfair commercial advantage.

125. Plaintiffs suffered loss of commercial opportunity, diminution in the value of intellectual property, and other damages, and one or more Defendants were unjustly enriched.

## NINTH CAUSE OF ACTION
## Concerted Action and Conspiracy Allegations Supporting Underlying Torts

126. Plaintiffs repeat and reallege Paragraphs 1 through 125.

127. One or more Defendants, together with their agents, employees, contractors, vendors, investigators, affiliated entities, the Doe TPA, and/or Does 1–12, acted in concert pursuant to a common plan to commit the unlawful acts described in this Complaint, including unauthorized access to Lafave's systems, surveillance, attempted evidence destruction, and misappropriation of Plaintiffs' proprietary information.

128. In furtherance of that plan, one or more participants committed overt acts, including deploying unauthorized devices, conducting network-intrusion activity, engaging in surveillance, attempting to destroy or overwrite evidence, and accessing or transmitting Plaintiffs' data. One or more Defendants knowingly participated in, facilitated, ratified, or benefited from that conduct.

129. These allegations are asserted to establish joint and several responsibility for the underlying tortious conduct and are not asserted as a freestanding cause of action independent of the underlying wrongs.

## TENTH CAUSE OF ACTION
## Unjust Enrichment Under New York Common Law

130. Plaintiffs repeat and reallege Paragraphs 1 through 129.

131. One or more Defendants were enriched at Plaintiffs' expense by the unauthorized acquisition, retention, use, or disclosure of Plaintiffs' confidential research materials, artificial-intelligence development data, quantum-computing-related materials, patent-related information, source code, and related intellectual property.

132. Under equity and good conscience, one or more Defendants should not be permitted to retain benefits derived from that conduct. This claim is pleaded in the alternative to Plaintiffs' claims at law.

**ELEVENTH CAUSE OF ACTION**
**Aiding and Abetting Tortious Conduct Under New York Common Law**

133. Plaintiffs repeat and reallege Paragraphs 1 through 132.

134. One or more Defendants, including Doe defendants, committed the underlying tortious acts alleged in this Complaint. Upon information and belief, one or more other Defendants had actual knowledge of the unlawful nature of that conduct and provided substantial assistance by, among other things, supplying, facilitating access to, transmitting, concealing, retaining, using, or failing to prevent the misuse of Plaintiffs' information or systems.

135. That substantial assistance was a proximate cause of Plaintiffs' injuries. Substantial assistance included supplying claim-derived device and location metadata, facilitating access to claim files and communications, and coordinating vendors who executed or enabled the intrusions.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request judgment against Defendants as follows:

136. Compensatory damages in an amount to be determined at trial, including damages for economic loss, loss of use of computer systems, loss of confidentiality of proprietary information, loss of trade-secret value, loss of commercial opportunity, investigation and remediation costs, and all other damages permitted by law;

137. A permanent injunction prohibiting Defendants and persons acting in concert with them from accessing, using, disclosing, transmitting, transferring, copying, modifying, deleting,

destroying, or otherwise exploiting Plaintiffs' confidential information, trade secrets, proprietary materials, devices, accounts, repositories, or data;

138. Disgorgement and restitution of any benefits unjustly retained by Defendants, as appropriate;

139. Punitive and/or exemplary damages to the extent permitted by law, including under the DTSA for willful and malicious misappropriation;

140. Attorneys' fees and costs as authorized by law;

141. Pre-judgment and post-judgment interest as permitted by law; and

142. Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues so triable.

DATED: September 11, 2026
Brooklyn, New York

/s/ Michael Hassard
Michael Hassard(NYS Bar No. 5824768)
Tor Ekeland Law, PLLC
30 Wall Street, 8th Floor
New York, NY
t (718) 737 – 7264
michael@torekeland.com

/s/ Tor Ekeland
Tor Ekeland (NYS Bar No. 4493631)
Tor Ekeland Law, PLLC
30 Wall Street, 8th Floor
New York, NY
t (718) 737 – 7264
tor@torekeland.com

*Counsel for Plaintiff Michael Lafave*